[Cite as *State ex rel. Andrasi v. Indus. Comm.*, 2016-Ohio-4971.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio ex rel. Jerry Andrasi, | : | |
| Relator, | : | |
| v. | : | No. 15AP-531 |
| The Industrial Commission of Ohio, and [Greater Cleveland Regional Transit Authority], | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |

D E C I S I O N

Rendered on July 14, 2016

*Shapiro, Shapiro & Shapiro, Co., L.P.A., Leah Vanderkayy* and *Daniel L. Shapiro,* for relator.

*Michael DeWine*, Attorney General, and *Andrew J. Alatis,* for respondent Industrial Commission of Ohio.

*Anna Hlavacs,* for respondent Greater Cleveland Regional Transit Authority.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

BRUNNER, J.

{¶ 1} Relator, Jerry Andrasi ("Andrasi"), has filed this original action requesting this Court to issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("Commission"), to vacate its order which denied his application for temporary total disability ("TTD") compensation for the period beginning December 18, 2014, and ordering the Commission to find that he is entitled to the requested compensation or that he be allowed a new hearing. The Commission maintains its continuing determination

No. 15AP-531

that there is no evidence in the record that Andrasi returned to employment after he voluntarily abandoned the workforce, and, consequently, Andrasi has failed to show that he is eligible to receive the requested compensation.

{¶ 2}  This Court referred this matter to a magistrate pursuant to Civ.R. 53(C) and Loc.R. 13(M) of the Tenth District Court of Appeals.  The magistrate issued the appended decision, including findings of fact and conclusions of law, and recommended that this Court deny Andrasi's request for a writ of mandamus.

{¶ 3}  On March 8, 2016, Andrasi filed his objections to magistrate's February 26, 2016 decision. This Court notes that Andrasi does not set forth specifically enumerated objections to either the findings of fact or conclusions of law set forth in the magistrate's decision. Instead, he provides a memorandum in support of objections to the magistrate's decision, which appears to challenge the validity of evidence that Greater Cleveland Regional Transit Authority ("GCRTA") allegedly relied on to conclude that he had voluntarily abandoned the workforce.

{¶ 4}  After reviewing the magistrate's decision, independently reviewing the record pursuant to Civ.R. 53, and duly considering Andrasi's objections, we overrule Andrasi's objections and adopt the magistrate's findings of fact and conclusions of law as our own.

## I.  STATEMENT OF FACTS

{¶ 5}  Andrasi sustained a work-related injury on January 25, 1985, while employed by the GCRTA, a self-insured employer. His claim was allowed for "injury to right knee; torn right medial meniscus right knee; left knee chondromalacia patella; degenerative arthritis right knee; osteoarthritis left knee; right shoulder deltoid pectoral major strain; tear of the left supraspinatus tendon; full thickness rotator cuff tear, right shoulder; right should osteoarthritis." (Oct. 19, 2015 Stipulation of Evidence at 89.)  His claim was disallowed for "low back injury; rotator cuff tear left shoulder." (Stipulation of Evidence at 89.)

{¶ 6}  Following a hearing on December 29, 1994, the Commission found Andrasi to be permanently and totally disabled and awarded him permanent total disability ("PTD") compensation based solely on the allowed conditions beginning March 27, 1991.

No. 15AP-531

{¶ 7}   On September 26, 2002, GCRTA filed a motion requesting the Commission to determine whether Andrasi still was entitled to receive PTD compensation.   On December 12, 2002, a hearing was held before a Commission Staff Hearing Officer ("SHO").   The SHO subsequently determined that the evidence on file and adduced at the hearing demonstrated that Andrasi had been capable of sustained remunerative employment from at least May 24, 1999. In the order terminating Andrasi's PTD compensation, the SHO specifically noted that Andrasi had been transporting vehicles for car dealerships as early as May 24, 1999, and that Andrasi had admitted at the hearing that he had transported vehicles as recently as two weeks before that hearing.   The SHO also noted videotape evidence showed Andrasi carrying five gallon buckets and strenuously pulling on a lawn mower cord, as well as photographic evidence of Andrasi tearing off the roof of a garage. Andrasi admitted at the hearing that he was the individual depicted in the photographs.   Based on the evidence, the SHO found that:

> [Andrasi's] activities since May, 1999 have demonstrated that he is capable of being engaged in the business of transporting vehicles and may well be capable of engaging in even more strenuous work activities. The [SHO] notes that some of the vehicle transports have involved moving vehicles to other states or for hundreds of miles within Ohio. The [SHO] finds that [Andrasi's] activities show that he has been capable of engaging in sustained remunerative employment regardless of whether he has actually received wages for his activities.

(Stipulation of Evidence at 5.)

{¶ 8}   By order mailed August 7, 2003, the Commission denied Andrasi's request for reconsideration of the December 12, 2002 SHO order.

{¶ 9}   Andrasi underwent surgery for an allowed condition on September 16, 2003. A Commission District Hearing Officer ("DHO") awarded him TTD compensation from September 16, 2003 through July 28, 2004, and terminated Andrasi's TTD compensation as of July 29, 2004 based on a finding that his allowed condition had reached maximum medical improvement ("MMI").

{¶ 10} On November 24, 2009, Andrasi's treating physician completed and signed a Medco-14 form indicating that Andrasi was able to perform work at the light exertional level. Disability Management Options ("DMO") then contacted Andrasi to ask if he wanted to move forward with vocational services. DMO's Initial Evaluation Report states

that Andrasi "wanted to discuss it with his attorney first, because he has a lot of concerns regarding his ability to work based on symptoms from both allowed and unallowed conditions." (Stipulation of Evidence at 95.) DMO's report noted that Andrasi was currently receiving Public Employees Retirement System ("PERS") disability and that Andrasi "indicated that he cannot picture himself working." (Stipulation of Evidence at 96.) The DMO's Report Case Plan section contains the following notes:

> Mr. Andrasi wants to discuss his decision regarding participation in vocational rehabilitation services with his attorney. He is of the opinion that he probably cannot engage in employment due to his physical condition and chronic pain. Should he decide to participate in vocational rehabilitation, he will undergo a Comprehensive Vocational Evaluation in an effort to further determine his feasibility for vocational services.

(Stipulation of Evidence at 97.)

{¶ 11} On January 20, 2012, Andrasi requested payment of TTD compensation from approximately June 1, 2011 and continuing. On March 19, 2012, his request was heard by a DHO, who denied it, finding there was insufficient medical evidence on file to support the requested period of disability. Andrasi appealed, and the matter was heard by a SHO on April 25, 2012. The SHO's order specifically noted that Andrasi had been on PERS disability since 1991 and that Andrasi testified at the hearing that he had not worked since 1985. The SHO found that Andrasi "is out of the workforce for an indefinite period of time without any present indication that this will change and temporary total disability compensation is also not indicated for that reason." (Stipulation of Evidence at 49.) Andrasi's appeal of the SHO order was denied by order of the Commission mailed May 18, 2012.

{¶ 12} On December 18, 2014, Andrasi filed an application for TTD compensation. On February 10, 2015, his request was heard before a DHO, who denied it based on the 2012 Commission order finding that Andrasi had been out of the workforce. Andrasi's appeal was heard before a SHO on March 25, 2015. The SHO affirmed the DHO's order and denied the request for TTD compensation, finding that the Andrasi had abandoned the workforce.

{¶ 13} After the Commission denied Andrasi's appeal by order mailed April 21, 2015, he filed this mandamus action.

No. 15AP-531

{¶ 14} The magistrate recommends in the attached decision that this Court deny Andrasi's request for a writ of mandamus for the reason that Andrasi has not demonstrated that the Commission abused its discretion in denying his most recently requested period of TTD compensation based on the finding that Andrasi had been found to have voluntarily abandoned the workforce.

## II. OBJECTIONS

{¶ 15} As previously noted, Andrasi's objections to magistrate's February 26, 2016 decision does not set forth specifically enumerated objections to either the findings of fact or conclusions of law set forth in the magistrate's decision. Instead, it consists of a memorandum in support of objections to the magistrate's decision. Andrasi's memorandum begins with the following general statement:

> Mr. Andrasi respectfully objects to the Magistrate's February 26, 2016 decision for the reason stated in the paragraphs that follow. We ask that the findings of voluntary abandonment be reversed, as Mr. Andrasi has been physically unable to work for years and, as such, cannot have "voluntarily" abandoned the workforce. His departure from the workforce is not a choice, but involuntary as he is unable to physically sustain remunerative employment.

(Mar. 28, 2016 Objs. to Mag.'s Feb. 26, 2016 Decision at 2.)

{¶ 16} Andrasi's memorandum proceeds to challenge the validity of four matters of evidence that he claims GCRTA relied on to conclude that he had voluntarily abandoned the workforce. His memorandum does not, however, address the magistrate's factual findings or legal conclusions regarding that evidence as it relates to the magistrate's decision. Andrasi's memorandum concludes with the following statement:

> The "evidence" relied upon by the Employer to support their [sic] conclusion that Mr. Andrasi was physically able to work and thus voluntarily abandoned the workforce, is clearly not what they [sic] would have you believe it is. There is simply no evidence in the record to support the idea that Mr. Andrasi was ever physically capable of returning to the work force. Since Mr. Andrasi was not physically capable of working, he cannot have "voluntarily" abandoned the work force. His leaving the work force was not a decision, but was the consequence of being physically unable to sustain employment. For this reason, we respectfully object to the Magistrate's February 26, 2016 decision.

(*Id.* at 7.)

No. 15AP-531

### III.  DISCUSSION

{¶ 17}  To be entitled to relief in mandamus, Andrasi must establish (1) that he has a clear legal right to the relief prayed for, (2) that the Commission is under a clear legal duty to perform the act requested, and (3) that he has no plain and adequate remedy in the ordinary course of law. *State ex rel. Berger v. McMonagle*, 6 Ohio St.3d 28 (1983).  To do this, Andrasi must show that the Commission abused its discretion. "[I]n this context, abuse of discretion has been repeatedly defined as a showing that the commission's decision was rendered without some evidence to support it." *State ex rel. Burley v. Coil Packing, Inc.*, 31 Ohio St.3d 18, 20 (1987).

{¶ 18}  As the magistrate's decision sets forth, TTD compensation, pursuant to R.C. 4123.56, has been defined as compensation for lost wages where a claimant's injury prevents a return to the former position of employment. The magistrate's decision also sets forth the limitations on awards of TTD compensation:

> TTD compensation shall be paid to a claimant until one of four things occurs: (1) claimant has returned to work, (2) claimant's treating physician has made a written statement that claimant is able to return to the former position of employment, (3) when work within the physical capabilities of claimant is made available by the employer or another employer, or (4) claimant has reached MMI. *See* R.C. 4123.56(A); *State ex rel. Ramirez v. Indus. Comm.*, 69 Ohio St.2d 630 (1982).

(Mag. Decision at ¶ 45.)

{¶ 19}  Additionally, the magistrate's decision contains a comprehensive discussion of the case law regarding entitlement to TTD benefits, including how such entitlements have been affected by the voluntary abandonment doctrine as manifested in *State ex rel. Louisiana-Pacific Corp. v. Indus. Comm.*, 72 Ohio St.3d 401 (1995), as modified in *State ex rel. McCoy v. Dedicated Transport, Inc.*, 97 Ohio St.3d 25, 2002-Ohio-5305, and *State ex rel. Eckerly v. Indus. Comm.*, 105 Ohio St.3d 428, 2005-Ohio-2587 (the industrial injury must remove the claimant for his or her job, a requirement that cannot be satisfied if the claimant had no job at the time of the injury).

{¶ 20}  The magistrate's decision acknowledges that "there is some evidence in the record that GCRTA paid relator TTD compensation as late as 2013." (Mag. Decision at ¶ 52.) However, the magistrate noted that GCRTA paid that compensation, not due to any

No. 15AP-531

Commission order, but in its capacity as a self-insured employer with a third-party administrator that makes the initial decision concerning the payment of any compensation.

{¶ 21} The magistrate determined that the evidence in the record contradicted Andrasi's contention that the compensation paid by GCRTA was some evidence that he was working in 2013:

> The stipulation of evidence indicates that [Andrasi] has had numerous surgeries for his allowed conditions including one near the time that this TTD compensation was paid. Although [Andrasi] asserts [this constitutes] some evidence that he was working in 2013, it is contradicted by the numerous Medco-14s from his physician certifying that he has been unable to return to his former position of employment since 2010. This evidence was before the commission when it denied the most recent period of TTD compensation and, to the extent that [Andrasi] made this argument below, it was not found to be persuasive.

(Mag. Decision at ¶ 52.)

{¶ 22} The magistrate distinguished GCRTA's decision to pay Andrasi's TTD compensation independent of a Commission order from a determination of the Commission in determining whether Andrasi was entitled to TTD compensation:

> Clearly, the allowed conditions in [Andrasi's] claim are significant and he has had numerous surgeries as a result. While he was awarded PTD compensation in 1994, his PTD compensation was terminated five years thereafter based on a finding he had been engaged in sustained remunerative employment into 2001. Even though TTD compensation was paid to him for various periods thereafter, [Andrasi] has not submitted any evidence that he has worked since 2001. The mere fact that TTD compensation was paid to him is indicative that GCRTA did not raise the issue of voluntary abandonment at those times. However, this does not negate the commission's determination here that [Andrasi's] disability is not causing him a loss of wages.

(Mag. Decision at ¶ 53.)

{¶ 23} Based on the facts and applicable law, the magistrate concluded that Andrasi had not demonstrated that the Commission abused its discretion when it denied his request for TDD compensation for the period beginning December 18, 2014:

No. 15AP-531

> The burden is on [Andrasi] to demonstrate that his current period of disability is: (1) related to the allowed conditions, and (2) results in a loss of wages. Having failed to meet this burden of proof demonstrating any lost wages, the magistrate finds that [Andrasi] has not demonstrated that the commission abused its discretion by denying the most recently requested period of TTD compensation based on a finding that [Andrasi] had been found to have voluntarily abandoned the workforce.

(Mag. Decision at ¶ 53.)

{¶ 24} The Commission previously determined at the April 25, 2012 hearing that Andrasi had voluntarily abandoned the workforce. The Commission determined that there was no evidence in the record that Andrasi returned to employment after the April 25, 2012 hearing. Consequently, the lack of any evidence in support of Andrasi's burden to show a loss of wages constitutes some evidence in the record (based on the lack of it) that Andrasi had voluntarily abandoned the workforce. The Commission was within its discretion to rely on that evidence to determine that Andrasi was not entitled to TTD compensation for the period beginning December 18, 2014.

## IV. CONCLUSION

{¶ 25} Upon review of the magistrate's decision, an independent review of the record, and due consideration of Andrasi's filing objecting to the magistrate's decision, we find the magistrate has properly stated the pertinent facts and applied the relevant law to Andrasi's situation. Therefore, we overrule Andrasi's objections to the magistrate's decision and adopt the decision as our own, including the findings of fact and conclusions of law therein, and in keeping with the magistrate's decision, we overrule and deny the requested writ of mandamus.

*Objections overruled;*
*petition for writ of mandamus denied.*

BROWN and LUPER SCHUSTER, JJ., concur.

———————

No. 15AP-531

APPENDIX

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio ex rel. Jerry Andrasi,        :

          Relator,        :

v.        :        No. 15AP-531

The Industrial Commission of Ohio,        :        (REGULAR CALENDAR)
and [Greater Cleveland Regional
Transit Authority],        :

          Respondents.        :

---

M A G I S T R A T E ' S   D E C I S I O N

Rendered on February 26, 2016

---

*Leah Vanderkayy* and *Daniel L. Shapiro,* for relator.

*Michael DeWine,* Attorney General, and *Andrew J. Alatis,* for respondent Industrial Commission of Ohio.

*Anna Hlavacs,* for respondent Greater Cleveland Regional Transit Authority.

---

{¶ 26} Relator, Jerry Andrasi, has filed this original action, requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order which denied his application for temporary total disability ("TTD") compensation finding that he voluntarily abandoned the workforce, and ordering the commission to find that he is entitled to that compensation.

No. 15AP-531

Findings of Fact:

{¶ 27} 1. Relator sustained a work-related injury on January 25, 1985 while employed by respondent, Greater Cleveland Regional Transit Authority ("GCRTA"), and his claim was allowed for the following conditions:

> Injury to right knee; torn right medial meniscus right knee; left knee chondromalacia patella; degenerative arthritis right knee; osteoarthritis left knee; right shoulder deltoid pectoral major strain; tear of the left supraspinatus tendon.

{¶ 28} 2. Following a hearing on December 29, 1994, relator was awarded permanent total disability ("PTD") compensation based solely on the allowed conditions in his claim and without a discussion of the non-medical disability factors.

{¶ 29} 3. On September 26, 2002, GCRTA filed a motion asking the commission to determine whether relator was still entitled to receive PTD compensation alleging that relator had been involved in work activities, and asking the commission to declare an overpayment.

{¶ 30} 4. Following a hearing before a staff hearing officer ("SHO") on December 12, 2002, GCRTA's motion was granted. The SHO determined that relator had been capable of sustained remunerative employment from at least May 24, 1999. Specifically, the SHO stated:

> Based upon the evidence on file and adduced at hearing, the Staff Hearing Officer terminates claimant's permanent and total disability compensation benefits and declares an overpayment of all permanent and total disability compensation paid from 05/24/1999 to the present. The overpayment declared is to be recouped pursuant to the provisions of O.R.C. Section 4123.511(J).
>
> The Staff Hearing Officer has relied upon the Ohio Bureau of Workers' Compensation/Special Investigations report, the testimony of Ms. Peck and the 08/18/1999 report of Bureau of Research in finding that claimant has been capable of engaging in sustained remunerative employment from at least 05/24/1999 when he began transporting vehicles for two car dealers. The first documented records of claimant being engaged in transporting vehicles come from Don's Brooklyn Chevrolet (attachment 15 to the above noted Special Investigations report) and 05/24/1999 is the date of a petty cash voucher issued to claimant. It should be noted

that at hearing claimant has admitted to transporting vehicles and indicated that his most recent vehicle transport was two weeks prior to this hearing and involved transporting vehicles between Cleveland and Massillon.

The Staff Hearing Officer notes that the 08/12/1999 videotape evidence from the Bureau of Research showed claimant walking, carrying five gallon buckets and strenuously pulling numerous times on a lawn mower cord with such force that the mower moved. The Staff Hearing Officer also notes that there are numerous photographs on file which were taken on 06/29/2001 and show claimant engaged in tearing off the roof of a garage. Claimant has admitted at hearing that he was depicted in the photographs.

Based upon all of the above, the Staff Hearing Officer finds that claimant's activities since May, 1999 have demonstrated that he is at least capable of being engaged in the business of transporting vehicles and may well be capable of engaging in even more strenuous work activities. The Staff Hearing Officer notes that some of the vehicle transports have involved moving vehicles to other states or for hundreds of miles within Ohio. The Staff Hearing Officer finds that claimant's activities show that he has been capable of engaging in sustained remunerative employment regardless of whether he has actually received wages for his activities.

{¶ 31} 5. Relator's request for reconsideration was denied by order of the commission mailed August 7, 2003.

{¶ 32} 6. Following termination of relator's PTD compensation in 2002, the commission determined that he was eligible for TTD compensation from September 16, 2003 through July 28, 2004. At that time, the commission found that his allowed conditions had reached maximum medical improvement ("MMI").

{¶ 33} 7. Relator's treating physician Bernard Stulberg, M.D., completed and signed a Medco-14 dated November 24, 2009, indicating that relator was able to perform work activities at a light exertional level.

{¶ 34} 8. Because Dr. Stulberg had opined that relator was capable of performing work at a light exertional level, relator was contacted by Disability Management Options to determine his feasibility for vocational rehabilitation and vocational services. The initial evaluation report prepared thereafter indicated that relator was currently receiving

Public Employees Retirement System ("PERS") disability and he did not believe he could engage in employment due to his physical condition and chronic pain. Relator indicated that he wanted to discuss the decision to participate in vocational rehabilitation services with his attorney.

{¶ 35} 9. It is undisputed that GCRTA, through its third-party administrator, paid TTD compensation for several periods of time through 2011.

{¶ 36} 10. On January 20, 2012, relator filed a C-86 motion seeking payment of TTD compensation from June 1, 2011 and continuing.

{¶ 37} 11. Relator's request was heard before a district hearing officer ("DHO") on March 19, 2012. The DHO denied relator's request finding there was insufficient medical evidence on file to support the requested period of disability.

{¶ 38} 12. Relator appealed and the matter was heard before an SHO on April 25, 2012. In affirming the prior DHO order and denying the request for TTD compensation, the SHO relied on medical evidence which contradicted the medical evidence submitted by relator and noted relator had been receiving disability since 1991 and had been out of the workforce. Specifically, the SHO order states:

> The Staff Hearing Officer affirms the District Hearing Officer's finding that temporary total disability compensation be denied from 06/01/2011 through 12/15/2011 based on the report of Dr. Ghanma dated 10/10/2011.[1] It is noted that the Injured Worker has been on OPERS disability since 1991 and the injured worker testified at this hearing that he has not worked since 1985. The Hearing Officer finds that the Injured Worker is out of the workforce for an indefinite period of time without any present indication that this will change and temporary total disability compensation is also not indicated for that reason.

{¶ 39} 13. Relator filed another application for TTD compensation on December 18, 2014. Relator's request for TTD compensation was heard before a DHO on February 10, 2015 and was denied based on the 2012 commission order finding that relator had been out of the workforce. Specifically, the DHO order states:

---

[1] While the stipulation of evidence contains an addendum report from Dr. Ghanma dated April 23, 2010, there is no copy of a report dated October 10, 2011.

It is the order of the District Hearing Officer that the C-84 Request For Payment of Temporary Total Disability Compensation filed 12/18/2014 is denied.

Upon review and consideration of the evidence in the claim file and statements at hearing the request for payment of temporary total disability compensation from 12/18/2015 [sic] to the present and to continue is denied.

At a hearing on 04/25/2012, the Industrial Commission has previously found that the Injured Worker was 'out of the workforce'. No affirmative evidence was presented at hearing that the Injured Worker having re-entered the workforce. Therefore, the Injured Worker is currently not entitled to payment of temporary total disability compensation.

{¶ 40} 14. Relator's appeal was heard before an SHO on March 25, 2015. The SHO affirmed the prior DHO order and denied the request for TTD compensation finding that relator had abandoned the workforce as follows:

The Staff Hearing Officer denies the Injured Worker's request for the payment of temporary total disability compensation beginning 12/18/2014 forward to the present. Per the 04/25/2012 Staff Hearing Officer order, the Injured Worker was found to have abandoned the workforce. There is no evidence to demonstrate that, subsequent to that 04/25/2012 order, the Injured Worker has returned to work. Payment of temporary total disability compensation is barred where there has been an abandonment of the workforce and no evidence presented of an actual return to work thereafter.

While the Injured Worker disagrees with the findings of the 04/25/2012 order as to an abandonment of the workforce, the Staff Hearing Officer notes that the factors cited by the Injured Worker at today's hearing (payment of temporary total disability compensation as recently as 2011; finding of work activity per Staff Hearing Officer order of 12/12/2002), took place, obviously, prior to the 04/25/2012 hearing.

The question of payment of temporary total disability compensation was considered anew at the 04/25/2012 hearing and, based upon the evidence then considered, the 04/25/2012 order was issued. There was no successful appeal taken from that order. Consequently, as the Industrial Commission speaks through its orders, the findings set forth in that (04/25/2012) order must be accepted as accurate

based upon the evidence considered at that hearing and at that time.

{¶ 41} 15. Relator's further appeal was denied by order of the commission mailed April 21, 2015.

{¶ 42} 16. Thereafter, relator filed the instant mandamus action in this court.

Conclusions of Law:

{¶ 43} For the reasons that follow, it is this magistrate's decision that this court should deny relator's request for a writ of mandamus.

{¶ 44} The Supreme Court of Ohio has set forth three requirements which must be met in establishing a right to a writ of mandamus: (1) that relator has a clear legal right to the relief prayed for, (2) that respondent is under a clear legal duty to perform the act requested, and (3) that relator has no plain and adequate remedy in the ordinary course of the law. *State ex rel. Berger v. McMonagle*, 6 Ohio St.3d 28 (1983).

{¶ 45} TTD compensation awarded pursuant to R.C. 4123.56 has been defined as compensation for wages lost where a claimant's injury prevents a return to the former position of employment. Upon that predicate, TTD compensation shall be paid to a claimant until one of four things occurs: (1) claimant has returned to work, (2) claimant's treating physician has made a written statement that claimant is able to return to the former position of employment, (3) when work within the physical capabilities of claimant is made available by the employer or another employer, or (4) claimant has reached MMI. *See* R.C. 4123.56(A); *State ex rel. Ramirez v. Indus. Comm.*, 69 Ohio St.2d 630 (1982).

{¶ 46} Historically, this court first held that, where the employee has taken action that would preclude his returning to his former position of employment, even if he were able to do so, he is not entitled to continued TTD benefits since it is his own action, rather than the industrial injury, which prevents his returning to his former position of employment. *State ex rel. Jones & Laughlin Steel Corp. v. Indus. Comm.*, 29 Ohio App.3d 145 (10th Dist.1985). The *Jones & Laughlin* rationale was adopted by the Supreme Court of Ohio in *State ex rel. Ashcraft v. Indus. Comm.*, 34 Ohio St.3d 42 (1987), wherein the court recognized a "two-part test" to determine whether an injury qualified for TTD compensation. *Ashcraft* at 44. The first part of the test focuses upon the disabling aspects

No. 15AP-531

of the injury whereas the latter part determines if there are any other factors, other than the injury, which prevent the claimant from returning to his former position of employment. *Id.*

{¶ 47} Where an employee was found to have abandoned his former position of employment, the employee was foreclosed from receiving TTD compensation at a later date. This was true both where an employee was fired and when they left for other employment.

{¶ 48} Finding this absolute bar to a future award of TTD compensation unfair, the Supreme Court held as follows in the syllabus of *State* ex *rel. McCoy v. Dedicated Transport Inc.,* 97 Ohio St.3d 25, 2002-Ohio-5305:

> A claimant who voluntarily abandoned his or her former position of employment or who was fired under circumstances that amount to a voluntary abandonment of the former position will be eligible to receive temporary total disability compensation pursuant to R.C. 4123.56 if he or she reenters the work force and, due to the original industrial injury, becomes temporarily and totally disabled while working at his or her new job.

{¶ 49} The *McCoy* holding was further explained by the court in *State ex rel. Eckerly v. Indus. Comm.,* 105 Ohio St.3d 428, 2005-Ohio-2587. In that case, the claimant, Shawn E. Eckerly, was fired from his job for unexcused absenteeism. Thereafter, the commission declared that the discharge constituted a voluntary abandonment of his employment under *State ex rel. Louisiana-Pacific Corp. v. Indus. Comm.*, 72 Ohio St.3d 401 (1995), and denied TTD compensation. Citing *McCoy,* the *Eckerly* court upheld the commission's denial of TTD compensation. The *Eckerly* court explains:

> The present claimant seemingly misunderstands *McCoy*. He appears to believe that so long as he establishes that he obtained another job-if even for a day-at some point after his departure from Tech II, TTC eligibility is forever after reestablished. Unfortunately, this belief overlooks the tenet that is key to *McCoy* and all other TTC cases before and after: that the industrial injury must remove the claimant from his or her job. This requirement obviously cannot be satisfied if claimant had no job at the time of the alleged disability.

*Id.* at ¶ 9.

{¶ 50} In this mandamus action, relator argues that the commission is misinterpreting the April 25, 2012 SHO order which denied him TTD compensation based on: (1) the report of Dr. Ghanma, (2) the fact that he has been on PERS disability since 1991, and (3) the fact that he has been out of the workforce for an indefinite period of time. Relator asserts that, in 2012, the SHO never found that he had voluntarily abandoned his employment. Further, when his PTD compensation was terminated and an overpayment was declared, the commission determined that he had been working since May 1999 and there was also evidence that he was still working in 2001. As such, relator asserts that, even if the 2012 order did find that he voluntarily abandoned his employment, he clearly had returned to work after 1985 and, pursuant to *McCoy,* was eligible to receive TTD compensation.

{¶ 51} Relator asserts the following facts clearly establish that the SHO order from April 25, 2012 did not find that he abandoned the workforce and that he is entitled to continuing periods of TTD compensation: (1) the SHO stated he last worked in 1985 when he was actually found to have been working as late as 2001, (2) his physician completed multiple Medco-14s asserting he was temporarily totally disabled from August 2012 through March 2015, and (3) GCRTA paid him TTD compensation for several periods of time after April 2012.

{¶ 52} The magistrate acknowledges that there is some evidence in the record that GCRTA paid relator TTD compensation as late as 2013. However, GCRTA is a self-insured employer and this compensation was not made pursuant to an order from the commission. As a self-insured employer, GCRTA has a third-party administrator that makes the initial decision concerning the payment of any compensation. The stipulation of evidence indicates that relator has had numerous surgeries for his allowed conditions including one near the time that this TTD compensation was paid. Although relator asserts this, this constitutes some evidence that he was working in 2013, it is contradicted by the numerous Medco-14s from his physician certifying that he has been unable to return to his former position of employment since 2010. This evidence was before the commission when it denied the most recent period of TTD compensation and, to the extent that relator made this argument below, it was not found to be persuasive.

{¶ 53} Clearly, the allowed conditions in relator's claim are significant and he has had numerous surgeries as a result. While he was awarded PTD compensation in 1994, his PTD compensation was terminated five years thereafter based on a finding that he had been engaged in sustained remunerative employment into 2001. Even though TTD compensation was paid to him for various periods thereafter, relator has not submitted any evidence that he has worked since 2001. The mere fact that TTD compensation was paid to him is indicative that GCRTA did not raise the issue of voluntary abandonment at those times. However, this does not negate the commission's determination here that relator's disability is not causing him a loss of wages. The burden is on relator to demonstrate that his current period of disability is: (1) related to the allowed conditions, and (2) results in a loss of wages. Having failed to meet this burden of proof demonstrating any lost wages, the magistrate finds that relator has not demonstrated that the commission abused its discretion by denying the most recently requested period of TTD compensation based on a finding that relator had been found to have voluntarily abandoned the workforce.

{¶ 54} Based on the foregoing, it is this magistrate's decision that relator has not demonstrated that the commission abused its discretion and relator's request for a writ of mandamus should be denied.

/S/ MAGISTRATE
STEPHANIE BISCA

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).